Case number 19-2798 from the District of South Dakota, United States v. Zam Mung. Mr. McGregor, we'll hear from you first. Thank you, Your Honor. May it please the Court, Mr. Killerman, Madam Clerk. Appellant Mung is an immigrant from Burma. He speaks very little English but can, with effort, grasp basic communication and make himself understood. He asks his conviction and his indictment dismissed for two reasons. First, Mung objected to the use of the term sex trafficking in the Count One Elements Instruction. That term is not part of the statutory language. It exists only in the heading of the statute. The long-standing rule of statutory construction, though, allows a heading to be used as an aid to the statutory interpretation only in cases of prohibits commercial sex trafficking activity. So the question is one of abuse of discretion. What difference does it make if the judge properly identified the elements of the crime? Because of the pejorative use of the term sex trafficking and in the instruction asking the jury to find whether or not he was guilty of sex trafficking when the offense is engaging in an unlawful commercial sex act, basically prostitution. Sex trafficking gives rise naturally to the issues of kidnapping and transferring of children around and that sort of thing. Why doesn't that help your client then if he didn't do those things and they gave that term that you say naturally suggests that additional merely having that term put into the mind of the jury when they start out saying it's your job to determine whether Mr. Mung is guilty of sex trafficking. That is the different thought. Putting that term in the mind of the jury. Is there any relevance to the fact that we actually went back, sometimes when you have headings it's not put in by essentially the reviser of statutes or the federal equivalent. We actually went back and looked at the statute at large and repeatedly used the term sex trafficking both in terms of the heading and even in the name of the act that modified it to describe the activities that are criminalized in the statute itself. Does that make any difference? Not in this case your honor because there is no definition in the criminal code of what the term sex trafficking means. I went back and looked at it too and there was in the original enactment quite frankly a definition of that term but it was not carried over into the criminal code. It was carried over into the provisions of the act, the main purpose for the act to stop sex trafficking among countries. It was more an issue of international diplomacy than the criminal law. The majority of it being codified in title 22 not title 18. Well let me tell you what I'm thinking. If the congress itself and the statute itself uses the term sex trafficking to describe the acts that your client committed, I find it hard to believe that the district court could have abused its discretion in adopting the language or the heading that the legislature or the congress itself adopted. Well it's a question of what that means in the mind of the jury. Not whether it was part of the heading of the statute. Clearly it's not part of the statute so if it was there wouldn't be a problem. But clearly it's not part of the statute. So then it becomes a question whether the congress put it in or anybody else. Whether the jury is going to look at it in a pejorative manner and right away designate Mr. Mung as an evil person because well we're telling he may be guilty of sex trafficking and that's what we've got to find here. The second issue, your honors, is the deficiency in the indictment for having failed to include the language of the statute that there was particularly in use of the reckless disregard standard that there was threat of force or coercion employed to get this individual to submit to a commercial sex act. Now clearly this individual didn't exist. This whole thing arose from a law enforcement sting. But nonetheless for the indictment that's what the statute requires. The statute says in an amendment that was made in 2008 that the defendant acted knowingly, that's one way to commit the violation, or in reckless disregard of the fact that threats, use of force, fraud or coercion was used to get the person to commit in a commercial sex act. The indictment simply says that Mr. Mung acted knowingly or in reckless disregard that the person was a minor and would be allowed to engage in a commercial sex act. That is sufficient, insufficient under the statute and frankly under this court's decision in United States v. Paul where the court seemed to say that that modification goes along with the term knowingly. Did he act knowingly with knowledge that fraud, coercion, etc. would be employed. That's actually what the court said in Paul a little more than what we are advocating here based on the 2008 amendment. That the additional qualifiers modify reckless disregard mens re and that none of that under any rate, none of it was in count one in the indictment with respect to either knowing or reckless disregard. So based on Paul having failed to admit it under the knowing standard the indictment is insufficient and based on our statutory analysis having failed to include it in count one of the indictment under the reckless disregard standard the indictment is insufficient for just completely ignoring that language altogether. Would counsel, as I look at just the plain language of the statute and I agree the case law doesn't seem to be dispositive here but just looking at the plain language of the statute it seems to me that the word knowingly refers to obtains or solicits whereas the knows or acts in reckless disregard applies to either that force will be used or that the person has not attained the age of 18. Where am I wrong? The way I read it, your honor, is that the reckless disregard of the fact that force, etc. will be used or a combination to get the person to engage in a commercial sect act or that the person has engaged or was 18. I think you're right. It would modify both of those. You know, Paul seems to suggest, you know, that the knowing language attends to, you know, getting the person to engage in, you know, age 18. So there's a little confusion there and I'll admit that frankly between my interpretation of the statute and what this court has seemed to suggest in Paul. And I would note because it was in the government's brief, the Paul decision came about in 2018. The Chappell decision on which the government relies came about in 2012. And we submit that the Chappell here is not really relevant because in that case, the question was the conduct of knowing or reckless disregard. And Chappell didn't deal with the additional language of fraud, threat, you know, coercion, etc. The problem in Chappell was that the defendant had been indicted under the wrong version of the statute. His conduct occurred in 2007, so he should have been indicted under the 2007 version of the statute, which merely applied to knowing conduct. And instead was charged under the 2008 version, which put in this reckless disregard of facts of fraud, force, threats of coercion, and whatnot being used. So I think that's the distinction in Chappell, why it doesn't really apply. But I would note anyway that Paul came about six years later and actually, you know, takes a bit of a contrary approach to Chappell. Paul, looking at 885 Fed 3rd 1104, said the defendant violates the statute if he knowingly recruits, entices, or benefits from participation, knowing that force, threats of force, fraud, coercion, or any combination. So Paul, the later case is at odds with Chappell, just on that. The third issue we've quickly raised here, Your Honor, is on the district courts charging Mr. Mung a $5,000 fee under the Victims of Trafficking Act, assessing that. Because Mung, during his pre-sentence interview, had offhand told the probation officer that he had $8,000 in the bank. That's all he ever said. Where that money is, what kind of account it is, if it even exists, you know, we don't know. Counsel, would you agree that it's Mung's burden to prove that he is indigent? I would. I would. I would say it's the government's burden to prove that he is subject to the Victim of Trafficking Act assessment based on his conviction. And then it's Mung's burden to prove that he's innocent, or that he's indigent. It's also his burden to prove that he's indigent. But then it's also the court's burden to prove or to justify assessing him that fee under the Victims of Trafficking Act. And the court in this case did not engage in any kind of a financial needs analysis. This court in the United States v. Kelly said should be done to determine whether a person otherwise indigent or not indigent should be charged with this fee. The court basically said two things, Mr. Mung. You've said you've got this $8,000. Whether you do or not, we don't know. But we're going to assume you did because you said it. And so I'm going to have you pay $5,000 of that amount as a Victims Assessment Act fee. Because one, you're going to be in prison for 10 years, and you're not going to need money. And two, the people of the United States are going to be paying $37,000 a year to keep you in prison. And so it's only fair that $5,000 of your funds be charged and put into the Trafficking Act offense. One, we would submit that even though he's going to be in prison for 10 years, a prisoner for commissary fees or whatever comes along, $8,000 is not that much money. Particularly when, as an immigrant, you have no one else to rely on to help provide you with the extra funds needed for a more comfortable existence in prison. Second, the fact that the people of the United States will pay for his incarceration. This court has in the past said the cost of incarceration is not a relevant consideration in a sentencing decision. So we would say on both of those grounds, the district court erred. And at a minimum, he should be remanded to resentence on the finding of indigency. We would also, of course, ask that he be remanded for dismissal of the indictment because the indictment just doesn't fairly charge an offense under the statute. Counsel, what evidence on the assessment, what evidence did Monk present that he was indigent? The only thing that was said, Your Honor, was his counsel told the court that it had no reason otherwise to dispute what Mr. Monk had said. He didn't carry his burden of proof, then, did he? No, he didn't. It could be viewed that way. I mean, it was never verified one way or another. It was just his offhand comment. Assuming he did not carry his burden of proof, the district court also did not meet the standard this court has imposed to decide whether he should have paid that fee. So it's also a question of the burdens of proof and how the court applied any finding of non-indigency and whatever funds may have been available. If I may, am I remembering correctly that there was no motion to challenge the indictment? You are, Your Honor. Yeah. Isn't that, haven't we said that that means you can't raise this kind of argument on appeal, the one you're raising about the defect in the indictment? Said it again, that was brought up in Paul. You have said that, although you have indicated that there is cause to avoid that, or there is reason to avoid that if a defendant can show just cause. And the only cause I can offer you to this is that with Mr. Monk's language requirements, it got so involved and intricate to get him to understand anything that these legal things kind of fell by the wayside at times. This case was tried before interpreters. Two different interpreters were employed and all communications with Mr. Monk had to be engaged in by interpreters. He speaks Zuni, which is a very small dialect of the language in Burma. How many interpreters are there for that language in South Dakota? None. One of them was from Oklahoma and one, I believe, maybe Eric can correct me, was from Illinois. So they took turns during the trial, you mean? Yes, they did. Interpreting, I see, interesting. All right, would you like to save your time for rebuttal then? I would, the final minute, thank you. Very well, thank you, sir. Mr. Kelderman, we'll hear from you. Good afternoon, your honors. May it please the court and counsel, I'm Assistant U.S. Attorney Eric Kelderman representing the United States in this appeal. The record of this case supports Zam Monk's conviction and judgment. The indictment here in this case was not defective. The district court did not plainly err in failing to dismiss it or in its instructions that were provided to the jury. The district court did not abuse its discretion using the statutory title. That was used to distinguish between the two offenses here, the term trafficking, which is contained in the heading of the statute. And the district court did not clearly err in imposing the $5,000 special assessment. Your honors, I'm going to focus, I guess, at least at first, on the argument with regard to the statutory text and the error that's being assigned or alleged there. Judge Colleton, as you noted, it's very difficult and it's a tough burden to meet when the defect in the indictment is not presented to the district court for consideration. This court said in fog just a couple of years ago, maybe just last year, that the defense, the appellant has to show cause and prejudice. They have to show good cause for why it wasn't brought up. The indictment in this case, the defendant was indicted in August 21, 2018. He made his initial appearance. After the interpreters were found and located, he made his initial appearance on September 14, 2018. After that, no pretrial motion was brought. No defect in the indictment was alleged. And I will submit to the court that's because there was no error in the indictment in this case. The statutory language, Judge Graz, if I may, the word knowing or knowingly is contained in two parts of the statute. So under 1591A, it begins off with whoever knowingly. Then it has a portion where it talks about whoever knowingly recruits, entices, harbors, transports, a number of other things. Whoever does those things knowingly. And there's a second part of it that applies to any offense under 1591. And that part reads, knowing or, except when constituting the violation of paragraph one is advertising, in reckless disregard of the fact that means of force or threats will be used or that person must not obtain the age of 18 years will be caused to engage in the commercial sex act.  I guess what I want to do is I want to point out to the court, I guess, the statutory construction here. The skeleton of the statute, if we just knock it down to the bare bones of it. It talks about knowing. Then the second clause there isn't applicable here. So I'm going to basically ignore the except where the act constituting the violation of paragraph one is advertising. So you cut that out. And it says knowing or in reckless disregard of the fact. And then it's a comma. And then it says that means of force, threats of force, or coercion, or a combination of those was used, or that a person had not attained the age of 18 years. The disjunctive nature of this allows for both of those charges, for both of those mens rea to be used. Knowing or in reckless disregard. That is in keeping with what this court held in 2012 in Chappell, the pronunciation I'm not sure of. That court there announced that the statute can be violated by both knowing or recklessly disregarding that the person being used was under the age of 18. The court there noted it because it was reversing. It was reversing a district court that had instructed the jury in that case on knowing or reckless disregard. The distinction is that the statute was amended after that. So the statute as it existed in 2007 only allowed for knowing, only allowed for conviction if the defendant knew the child was under the age of 18. The Chappell court noted that in 2008 the statute was amended. The statute was amended and it allowed for knowing or reckless disregard of the fact that the child was under 18. And that's the exact quote that came from Chappell. That's why I cited it in my brief. It may not be dispositive here because the exact issue was not being raised as it is in this case. But it's a very strong and very good indication that that's how the court viewed it in 2008. And that's because the statute had been amended. And that interpretation would seem counsel to be bolstered by the text of 1591C. I agree, your honor. 1591C puts the mens rea in a whole other realm. But essentially what 1591C says is that under those circumstances, the circumstances addressed in 1591C, you don't have to worry about knowing or reckless disregard. It puts both of them together. And I believe that that actually, just as you indicated, Judge Gras, that that does bolster this argument, this conclusion. Well, and it actually even goes further than that because it carries through the advertising exception, too. So in the first one, it accepts out advertising. And then when you go to C, that's the only actus reus that's not mentioned in C. So it seems to be a pretty clear interpretation of A as well. I agree. I agree, Judge Strauss. And I will follow up with that by pointing out that in my brief, in the United States brief, we cite a couple of other cases. They are from a couple of other circuits, Garcia and Curry from the 5th and 6th circuits. Actually, while I was preparing for this argument, I'll be happy to submit a 28-J letter. I found another case, and it is United States v. Banker, 876 F3rd 530. It's from the 4th Circuit in 2017. That case actually goes through a very detailed analysis of the language, of the use of ors in both parts of the second half of the statute, and also the use of the word that on two occasions. But I'll refer the court to pages 534 to 535 of that case as well. But I believe that the argument that's presented in the United States brief says the same thing, just perhaps not as eloquently. And so the authority from other courts does support the United States argument in that respect. As the court has noted with regard to the term trafficking, the heading, the word trafficking used in the heading, the court has wide discretion, the district court, that is, in formulating the instructions that it's going to use. Here, it used the title of the crime to refer to the crime as it was charged. In numerous other cases, and as long as I have been trying cases, the charge is referred to by name. The term trafficking is no more pejorative than other headings, other names that are used for crimes, such as murder, assault, kidnapping. It is just the name that's assigned to it. The district court here clearly instructed the jury, clearly instructed them that they have to find that all of the elements were met. That word wasn't contained. It wasn't one of the elements that they had to find was met. But they were instructed that they had to, in order to find the defendant guilty, find all the elements had been met. Here, clearly, by virtue of their verdict, the jury did that. The pejorative nature of this, I have yet to understand. I was not able to find in the appellant's briefing where the prejudice actually came in, how the defendant had shown any prejudice. And I don't believe that there is any, particularly in light of the instructions and the way that the court laid them out and gave the jury only one option. And that was, if you're going to find the defendant guilty, you have to find that the elements were met. As to the special assessment, the procedural way that it went down is the pre-sentence investigation report contained the $5,000 special assessment. It was listed in there as something that's applicable. And that's because the statute, it's section 3014A of title 18, mandates that the assessment shall be imposed unless a finding is made that the person is indigent. That's my paraphrase of it, of course. The Kelly case analyzed that and said that much like statutory fines and much like other monetary penalties, they apply, at least in some circumstances, they apply unless the defendant shows that he is indigent. Here, the defense objected. They objected to the $5,000 enhancement, but they did not object to the fact that there was $8,000 in his account. That information came from the defendant and was given to the pre-sentence investigation report writer, the probation officer. It was included in there. When the district court pressed defense counsel at the sentencing hearing, I guess it wasn't even really that he pressed. He just asked, are you suggesting that there was no $8,000 bank account? Well, I have no information to the contrary. I have no information otherwise, as I believe on the sentencing transcript at page 9 or 10, that was the response. It was Mungsberg after he was convicted, and he was convicted. I believe it was mentioned earlier that the United States had to show that the defendant was subject to that assessment. He was. Mung was convicted under Section 1591, that's part of Chapter 77 of Title 18, and that is mandatory. Those crimes under Chapter 77 are mandatory for that special assessment. Because it applied, Mung had the burden then to rebut it or to show that he was indigent. At sentencing, he admitted that there's no evidence to suggest that he didn't have $8,000 in the account that he had already admitted to the probation officer. Because of that, there was no error by the district court when the district court found that he was not indigent. Accordingly, because he's not indigent, the $5,000 special assessment applies. There was no error that occurred in that case. Your Honors, the United States submits that there was no problem with the indictment. There was no abuse of discretion in instructing the jury in using a term from the heading of the statute where the crime of conviction is found. And there was no error of any kind in assessing the $5,000 mandatory special assessment. The United States asks that the court affirm Mung's conviction and sentencing in all respects. Thank you for your argument. Mr. McGregor, we'll give you a minute for rebuttal if you'd like. Thank you, Your Honor. Quickly, the United States interpretation of the statute just throws away that language of threat of fraud, force, and coercion. That has to mean something. It either has to apply to a commercial sex act or the age, but you can't just disregard it altogether. And it's not just the statute that is necessarily the problem here in its interpretation. But count one of the indictment charged both knowing and reckless disregard conduct and completely omitted that phrase in the statute for any purpose. So even under the government's view of it all, their indictment is defective. That phrase is just simply absent in any respect. I'll let you get to your second point. But did this issue come up with the jury instructions at all? No, Your Honor, it did not. The issue of the jury instruction was the second point. Yeah, I know that. But I just wondered, since the indictment wasn't challenged, I wondered if the mens rea element was discussed. It might have been with no instructions. But no, it was not, Your Honor. All right. Go ahead on your second point quickly. Second on that, although the district court certainly has wide discretion, it is still not entitled to use an instruction that is an abuse of that instruction. And in this case it did because it used language in the instruction that was highly prejudicial of a pejorative nature. Count one simply should have been referred to as the commercial sex act count. Count two on which the jury acquitted should have simply been referred to as the enticement count using the Internet. For these reasons, Your Honors, we'd ask that Mr. Mung's conviction and sentence be vacated and his case sent back for dismissal of the indictment. Thank you. All right, gentlemen. Thank you both for joining us at a video conference from a beautiful part of our circuit. And thank you for your arguments.